BRADY, Justice:
This is an appeal from the Circuit Court of George County, Mississippi, wherein Choicy T. Henderson, Betty Henderson and Choicy T. Henderson, Administratrix of the Estate of Vernon E. Henderson, Deceased, obtained a judgment in the sum of $100,000 against Mrs. Evelyn Freeland, S. D’Antoni, Inc., T. L. Mydland Truck Lines, Inc., and Billy R. Williams. From that judgment this appeal is prosecuted by all defendants, who are appellants herein.
A concise statement of the material facts involved in this cause follows. On August 28, 1968, C. N. Freeland, who owns and operates a furniture and appliance store in Lucedale, Mississippi, left his place of business in a GMC three-quarter ton pickup truck. This truck was loaded with furniture and appliances which he was taking to Mobile. Proceeding in a generally eastward direction on Highway 98, he was approximately five miles east of Luce-dale when the right rear tire of his truck became flat. He parked the truck on the south shoulder of Highway 98 a disputed distance of two feet, or four or five inches from the blacktop. He crossed the road and went into the driveway of Mr. Seal and made two telephone calls. The first call was to Mr. Vernon E. Henderson, who owned and operated a Gulf Service Station in Lucedale, requesting him to send help out to change the flat tire on his truck. His second call was to his wife, Mrs. Evelyn Freeland, requesting that she send another of his trucks to the scene in order that the furniture could be changed to that truck if the flat could not be fixed.
Mrs. Freeland directed Earl J. Boulware, Jr., an employee of Mr. Freeland, to go to where Mr. Freeland had parked the truck *901 with the flat tire. Subsequent to the telephone conversation, Mrs. Freeland noticed that Mr. Freeland had left a list of appliance parts which he needed and intended to purchase in Mobile, Alabama. She therefore got in their white Pontiac automobile and proceeded to drive to the place where Mr. Freeland had parked his truck with the flat tire. The record discloses that Mr. Henderson had parked his truck directly behind Mr. Freeland’s truck a distance of three or four feet, and Mr. Boul-ware had parked the other truck of Mr. Freeland approximately seventy-five feet ahead of Mr. Freeland’s truck which had the flat tire.
The record discloses that Mrs. Freeland proceeded past the spot where the three trucks were located six hundred feet east to a driveway owned by a Mr. Byrd. She testified that she drove into the driveway and remained there fifteen or twenty minutes, being afraid of the traffic on Highway 98. Two of the Byrd children drove up in a car and in order to permit them to enter the driveway she backed her car eastward out of the driveway. It is disputed whether she backed her car onto the shoulder south of the blacktop or whether she backed into the westbound lane, thereby forcing Reverend Arthur H. Lord to reduce the speed of his car from fifty-five to sixty miles per hour to a slower rate, and causing truck No. 61 of Mydland Truck Lines, Inc., which was being operated at the time by the appellant, Mr. Billy R. Williams, to reduce its speed, thus requiring a car belonging to the mother and father of Billy R. Williams and being driven by appellant Williams’ mother, Mrs. Elizabeth Williams, to slow down. Approximately three hundred feet east of the Williams’ car on Highway 98 was a truck belonging to Alterman Transport Lines of Miami, Florida, being operated by James Wiggins, which was likewise forced to slow down. Mrs. Freeland then proceeded west in the westbound lane of Highway 98 from the Byrd driveway to a point on Highway 98 opposite the Seal driveway. She alone disputed the fact that she gave no signals of any kind and testified that she slowed down preparatory to making a turn to the north and right into the Seal driveway.
Mrs. Lord testified that Mrs. Freeland almost came to a complete stop and that she realized the grave danger which she and her husband faced because of the Mydland truck which was putting on its brakes and rapidly approaching their station wagon from the rear. The record discloses that Mrs. Lord’s husband accelerated the speed of the station wagon and succeeded in passing Mrs. Freeland’s car by going between it and the trucks parked on the south shoulder of the eastbound lane of Highway 98.
Mr. Williams, the driver of the Mydland truck, did not testify but the record discloses that Williams first applied the brakes of the Mydland truck when he was just west of the Brannan driveway which is located a distance of 287 feet from the Seal driveway, both driveways being located on the north side of Highway 98.
Mr. James Wiggins testified that he saw everything which transpired; that Mrs. Freeland gave no signs or signals indicating that she was going to turn right into the Seal driveway.
The record reveals that the Mydland truck laid down 256 feet of tire marks caused by the application of the brakes when Mr. Williams endeavored to stop his truck because of the actions of Mrs. Free-land. The record discloses that he, too, endeavored to miss the Freeland car, turning to the left, or the application of the brakes caused his truck to swerve to the left. The left front part of his truck struck the left front part of C. N. Freeland’s truck, driving it back into Henderson’s truck and striking Mr. Henderson between the two trucks. Mr. Henderson sustained skull fractures and a broken neck. Mr. Boul-ware, who was engaged in trying to remove a spare tire, was also injured, and Mr. *902 Freeland’s truck was pushed off the shoulder of the road down an incline.
These are the basic facts relating to the accident but in our discussion of the errors which have been assigned we will supplement where needed additional facts which we considered in arriving at our decision.
The appellees charged in their declaration that the appellant C. N. Freeland and appellant Billy R. Williams, the driver of the truck for the alleged D’Antoni-Mydland joint venture, were both negligent and that the negligence of each was the proximate cause of the fatal accident. The appel-lees further urged that the issue of whether a joint venture existed between S. D’An-toni, Inc. and T. L. Mydland Truck Lines, Inc. was a jury issue which the jury resolved in favor of the appellees and therefore both of these appellants were liable for driver-employee Williams’ alleged negligence.
Appellant Mrs. Freeland assigns as error that the lower court erred in not granting her a directed verdict upon her motion and for not giving her a peremptory instruction. This appellant also earnestly urges that the negligence of Billy Ray Williams, driver of the Mydland truck, is solely responsible for the accident and that recovery can be had only against him and those who may be liable for his negligence. This appellant also urges in substance that her negligence is remote and that the negligence of Billy Ray Williams, an independent intervening act, was the sole cause of the accident. This appellant also asserts the wrongful admission of evidence and wrongful rulings of the court with reference thereto and finally the giving of erroneous instructions.
We consider first the basic issue of whether or not Mrs. Evelyn Freeland and Mr. C. N. Freeland, and whether or not Billy Ray Williams, the employee and operator of the Mydland truck, were guilty of negligence. As heretofore stated, only Mrs. Evelyn Freeland testified that she gave the statutorily required signals indicating that she was going to make a right turn off Highway 98 into the Seal driveway. Mrs. Lord by her deposition clearly contradicts the testimony of Mrs. Freeland. Mrs. Lord’s testimony indicates that Mrs. Freeland either stopped or approximately stopped without giving any signal whatsoever of her intention to do so. This is corroborated by Mr. Wiggins, the driver of a truck belonging to the Alterman Transport Lines of Miami, Florida, who was following the car being driven by Mrs. Elizabeth Williams.
It should be noted that Officer Joe Clay, a member of the Mississippi Highway Patrol stationed in that area, arrived at the scene approximately fifteen or twenty minutes subsequent to the collision. He saw the Mydland truck and the Henderson and Freeland trucks as they were immediately after the accident. His testimony corroborates the testimony of Mr. Wiggins as to the position and distances apart of these trucks. Patrolman Clay advised that he drove his car into the Seal driveway and saw Mrs. Freeland’s car parked farther north in the driveway and when he opened the door to his car and got out, Mrs. Free-land stated to him, “My God, what have I caused.” Patrolman Clay also corroborated the testimony of Mr. Wiggins by testifying that the skidmarks which were laid down on the highway began just west of the Brannan driveway and came to the rear of the Mydland truck. He could trace the tire marks from the Brannan driveway “right on up to the rear of the Mydland truck.” He likewise measured the distance of the tire or skidmarks and testified that they extended 256 feet.
Approximately an hour and a half later an attorney, Mr. J. O. Moss, who has been an intimate friend of the Hendersons for many years, having gone to public school with Mrs. Henderson, made an independent investigation which corroborated the testimony of Mr. Wiggins and Patrolman Clay. This accident occurred at approximately 12:30 P.M., and at 3:00 P.M. Mr. *903 Moss and Patrolman Clay went back to the scene and on that afternoon and the following day Mr. Moss took twenty-seven pictures, some looking in both directions and revealing the Byrd, Brannan and Seal driveways and the distance they were from each other. He also took pictures of the skidmarks of the Mydland truck, both on Highway 98 and off on the shoulder of the road where the grass and ground had been disturbed.
Both appellants and appellees introduced maps properly authenticated and also photographs, the appellees’ photographs relating largely to the trucks and their condition. These photographs, however, clearly indicate beyond conjecture that the left front portion of the Mydland truck struck the left front part of the Freeland truck, driving it back into the Henderson truck. The pictures of the Henderson truck clearly indicate the force and location of the blow which the Freeland truck made upon it.
Appellant Mrs. Evelyn Freeland urges that the negligence of Billy Ray Williams was solely responsible for the accident and therefore recovery could be had only against him and those who may be liable for his negligence. The record discloses beyond peradventure that from the moment that Mrs. Freeland backed out of the Byrd driveway in order that the two Byrd children in their automobile could enter the same, there was initiated an unbroken chain of events by her when she proceeded to drive down the west portion of the highway to the Seal driveway opposite the place where her husband’s truck was located. It is utterly impossible to divorce Mrs. Freeland and her acts in driving her automobile as one of the proximate causes of this regrettable accident. Whether or not she gave the necessary signals, whether or not she stopped or slowed down without giving any signals, or whether or not she had turned into the Seal driveway before the collision, as she alleged she had, were issues of fact for determination by the jury. The evidence is abundant upon which the jury could find that her negligence was a proximate cause of the accident and injuries. Irrespective of the fact that Mr. Williams did not testify, the mute but irrefutable tire marks extending from the Brannan driveway a distance of 256 feet to where the Mydland truck struck the truck of Mr. Freeland alone would justify submission to the jury of the negligence on the part of Williams. However, the testimony of the disinterested witness Mr. Wiggins clearly discloses that this truck, though empty, was traveling at such a rate of speed going uphill with a degree of incline of from three to five degrees that it needed more than 256 feet in order to stop and avoid striking the Freeland truck parked on the south shoulder of the road.
The evidence was sufficient to justify the jury in believing that he was not operating his truck in a prudent and reasonably safe manner under the circumstances or that he was not keeping a proper lookout or that he was operating his truck at a rate of speed which was negligent under the existing circumstances. All of these questions of fact the jury resolved against Billy Ray Williams and his employer, Mydland Truck Lines, Inc., and this Court must admit that these facts are ample to justify this determination of fact by the jury. The jury found, and properly so, that Mr. C. N. Freeland was not guilty of any negligence which contributed to or proximately caused the wreck, and although the appellees appealed the judgment in favor of Mr. Freeland, nevertheless they dismissed their cross-appeal.
This disposes of the negligence of Mrs. Evelyn Freeland, C. N. Freeland, Billy Ray Williams, and Mydland Truck Lines, Inc. The record clearly reveals that Williams was employed and paid by Mydland Truck Lines, Inc. and was returning from an assignment given to him by Mydland Truck Lines, Inc. This leaves us the question of whether or not the facts of this record justify the contention of the appellees that *904 S. D’Antoni, Inc. and Mydland Truck Lines, Inc. were engaged on a joint venture and were therefore liable.
The appellees, in their determined effort to establish a joint venture, expertly utilized every possible means afforded by the evidence to prove that S. D’Antoni, Inc. and Mydland Truck Lines, Inc. were in fact joint venturers. Appellees proceeded in the trial of the case on the assumption that, since S. D’Antoni, Inc. and Mydland Truck Lines, Inc. had filed an application with the Interstate Commerce Commission and had obtained an order evidencing a control of Mydland by S. D’Antoni, Inc. through ownership of capital stock, the doctrine of respondeat superior was applicable and therefore the negligence of Williams could be imputed not only to Mydland but to Mydland’s alleged master, S. D’Antoni, Inc. Appellees, in developing their facts, also dealt with the potential that in truth and fact S. D’Antoni, Inc. and Mydland Truck Lines, Inc. were in essence, through stock ownership, one single legal identity. The pleadings and the proof offered in this case lead the ap-pellees to repudiate any contention under the application filed with the Interstate Commerce Commission that appellant S. D’Antoni, Inc. was continuing in control through stock ownership and management of T. L. Mydland Truck Lines, Inc.
The Interstate Commerce Commission authorized S. D’Antoni, Inc. to haul coca-cola syrup manufactured by the Coca-Cola Company and contained in tank trucks or drums. S. D’Antoni, Inc. also had a permit from the Interstate Commerce Commission to haul groceries for the A & P Company. This was the extent of hauling allowed S. D’Antoni, Inc. T. L. Mydland Truck Lines, Inc. had obtained a permit from the Interstate Commerce Commission authorizing them to haul bottled and canned goods, but nowhere in the permit is Myd-land Truck Lines, Inc. authorized to haul coca-cola syrup or groceries of A & P. Mydland was permitted to haul only coca-cola in bottles or cans.
Any issues urged by the appellees insofar as the application for permits and the issuance of permits by the Interstate Commerce Commission relating to the doctrine of respondeat superior are concerned, or their being one single legal identity, is clearly abandoned by the appellees as shown in their brief. Appellees state as follows:
On this appeal counsel for D’Antoni (S. D’Antoni, Inc.) argue that the issue is whether or not D’Antoni (S. D’Antoni, Inc.) and Mydland (Mydland Truck Lines, Inc.) were a single legal entity, thus being a single corporation. They further argue that the proof shows there were two separate corporations operating “different types of trucking businesses,” and that the Court “will not attempt to pierce the corporate veils of the two corporations and hold D’Antoni, Inc. (S. D’Antoni, Inc.) liable for any negligence of Williams under the doctrine of re-spondeat superior.” Appellees respectfully submit that this is not the issue. Appellees have never contended that D’Antoni (S. D’Antoni, Inc.) and Myd-land (Mydland Truck Lines, Inc.) were a single legal entity, a single corporation. They are not seeking “to pierce the corporate veil.” In all their pleadings appellees pled that D’Antoni (S. D’An-toni, Inc.) and Mydland (Mydland Truck Lines, Inc.) were two separate corporations, two separate legal entities. However, appellees further pled and proved facts which established to the jury’s satisfaction that D’Antoni (S. D’Antoni, Inc.) and Mydland (Mydland Truck Lines, Inc.) were joint venturers.
Thus is raised the crucial issue of whether or not the appellees met the burden of proof that rested upon them to prove by a preponderance of the evidence that S. D’Antoni, Inc. and Mydland Truck Lines, Inc. were joint venturers.
The facts upon which appellees base their contention that a joint venture existed between the corporate appellants are generally predicated upon these facts and in *905 ferences to be drawn therefrom. Appellees assert that S. D’Antoni, Inc. and Mydland Truck Lines, Inc. were sharing benefits and profits; that they interchanged truck drivers, tractors, trailers, license plates and that they interchanged the hauling of commodities. Appellees assert that they both hauled for A & P and both for Coca-Cola Company and no others. Appellees urge as proof of a joint venture that the corporate appellants had the same dispatcher, the same foreman, one Junior Wolverton, in charge of all operations and that he hired all employees. Appellees assert that they utilized the same mechanics and both leased Uniroyal tires stored in a trailer on the premises. Appellees urge that the premises were utilized by both appellants; that the appellants had the benefits of one headquarters office building, and all personal property, supplies and equipment therein. Appellees further assert that they had the same post-office box and both corporate appellants used the same fuel pumps and fuel tickets. Appellees urge that there does not have to be an express agreement by joint venturers for the sharing of profits; that the agreement can be implied and that there is no necessity for showing an agreement to exist for sharing losses.
To these contentions urged by the ap-pellees, appellants point out that there was no proof of any intermingling of rolling equipment other than that they were parked in the same terminal parking area. Appellant S. D’Antoni, Inc. further states that although the company utilized the same fuel pumps, the appellees ignored the undisputed proof that each company paid out of its own separate funds for the fuel drawn therefrom. Appellants point out that appellees incorrectly state that they use the same fuel tickets. The undisputed proof was that the tickets for fuel used by Mydland Truck Lines, Inc. were carefully so marked and paid for by that company. While appellees’ statement is that the same mechanics were used by both S. D’Antoni, Inc. and Mydland, appellees completely ignored the undisputed fact that each company paid from its own individual funds for the repairs made to their respective trucks. Appellees make a flat statement that the companies actually shared in profits. There is not any proof or testimony to this effect in the record and in this regard appellees are incorrect. There is no proof in the record of any interchange of truck drivers, though appellees assert this as a fact. Insofar as the interchange of tractors and trailers is concerned, the record reflects that a witness named Julius Catlett testified that during the two years that he worked for S. D’Antoni, Inc., which occurred prior to 1968, he made two, but only two, trips with a Mydland tractor and a D’Antoni, Inc. trailer, which arrangement he designated as a “borrowing.” This witness at the same time emphatically stated that he had never “pulled a load” billed out to Mydland, and worked only for D’Antoni, Inc. He testified that he was paid only by S. D’Antoni, Inc.
Insofar as appellees’ charge that both companies worked for the A & P Company and the Coca-Cola Company and interchanged the hauling of commodities is concerned, the undisputed proof shows that ninety percent of the business of S. D’An-toni, Inc. was under contract with the A & P and that Mydland had a separate small contract with A & P for hauling on different routes. The Coca-Cola Company of Atlanta only manufactured its syrup and S. D’Antoni, Inc. alone hauled for the Atlanta Coca-Cola Bottling Company and hauled only syrup. The record discloses that Mydland contracted with independent bottlers and hauled only bottled and canned drinks.
Catlett testified that he worked only for S. D’Antoni, Inc. and only hauled syrup, and never bottled drinks. Insofar as Foreman Junior Wolverton hiring employees for both companies is concerned, it is predicated solely upon the statement made by witness Catlett that when he was hired in 1966 he was hired by Wolverton. This occurred before Mydland was ever incorporated. The records of the Mississippi Public Service Commission indicate that *906 this permit was issued in 1967. At that time Wolverton was an employee of S. D’An-toni, Inc. Catlett frankly admitted that when S. D’Antoni, Inc. lost its A & P contract in July 1968 all employees necessarily left.
There is no proof that either corporate appellant operated in any manner except under its own ICC permit numbers MC 105750 for S. D’Antoni, Inc., and MC 127833 for Mydland Truck Lines, Inc. Although appellees urge there was substitution or transfer of identification plates bearing ICC numbers, which is forbidden by 49 U.S.C.A. section 324 (1938), the record wholly fails to disclose that there was any such substitution or transfer. In this connection it should be pointed out that any joint venture between carriers is in fact specifically prohibited by 49 U.S.C.A. section 5(1) (1940). This section makes it unlawful for a common carrier to enter into any contract, agreement, combination with any other carrier “for the pooling or division of traffic, or of service, or of gross or net earnings, or of any portion thereof” without the specific approval or order of the Interstate Commerce Commission. No such approval order under 49 U.S.C.A. section 5(1) (1940) was obtained. Any agreement in conflict such as a joint adventure agreement which involved the pooling or division of traffic or service or of gross or net earnings would be violative of 49 U.S.C.A. section 5(1) (1940) and therefore void. Nowhere do the appellees suggest any violation of these federal statutes regarding public carriers, either by S. D’Antoni, Inc. or Mydland Truck Lines, Inc. The fact that these public carriers, as is frequently the case, customarily jointly used terminals and the facilities thereof does not make them engaged in joint ventures. The testimony in this record clearly indicates that the equipment purchased by appellant S. D’Antoni, Inc. was brought from T. L. Mydland individually when Mr. Mydland was operating as T. L. Mydland Rentals. This was several years before the accident.
The burden of proof in this case, of course, rested upon the appellees. This burden was to prove the necessary elements of a joint venture or a partnership. Actually, no serious question of law is involved. The leading case in Mississippi and perhaps in the United States is the case of Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942). In that case there was direct testimony of agreement between the parties involved that some of them would furnish money and others labor in acquiring mineral leases and they would share in the leases so obtained. The decision dealt largely with a joint venture in the purchase of real estate. This Court, however, speaking through Justice Roberds, stated that the general rules applicable to and necessary for the creation of a joint venture are as follows:
In 30 Am.Jur. page 677, Sec. 3, it is said:
“A joint adventure has been broadly defined as an enterprise undertaken by several persons jointly, and, more particularly, as an association of two- or more persons to carry out a single business enterprise for profit * * * an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.” In Simpson v. Richmond Worsted Spinning Co., 128 Me. 22, 145 A. 250, 253, the Court said a “ ‘joint adventure’ has been defined as ‘an association of two or more persons to carry out a single business enterprise for profit.’ * * * » \ federal court said “ ‘Joint adventure’ exists when two or more persons combine in joint business enterprise for their mutual benefit with understanding that they are to share in profits or losses and that each is to have voice in its management.” Chisholm v. Gilmer, 4 Cir., 81 F.2d 120, 121, affirmed 299 U.S. 99, 57 S.Ct. 65, 81 L.Ed. 63, rehearing denied 299 U.S. 623, 57 S.Ct. 229, 81 L.Ed. 458. * * *
* * *
*907 There must be a joint proprietary interest and right of mutual control. * * The joint purpose and proprietary interest and control distinguish joint adventures from tenancy in common.
An agreement, express or implied, for sharing in the profits is essential to a joint adventure, hut the courts differ as to whether there must be an agreement to share in the losses. However, there need he no specific agreement to share in the losses, and if the nature of the undertaking is such that no losses other than those of time and labor in carrying it out are likely to occur, an agreement to share the profits may stamp it as a joint adventure, although nothing is said about sharing the losses. * * *
A contract between the parties is necessary, but it need not be express or embodied in a formal agreement. * * * (193 Miss. at 726-727; 8 So.2d at 260-261.)
We find the same requirements set forth for the establishment of a joint venture in Boxwell v. Champagne, 229 Miss. 355, 91 So.2d 256 (1956), as follows:
“Joint adventure may be said to be an association of two or more persons to carry out a single business enterprise for profit. 30 Am.Jur., Joint Adventurers, p. 677. For such purpose, they combine their property, money, effects, skill and knowledge. Ibid. p. 678, and agree to share jointly or in proportion to the capital contributed in the profits and losses. Ibid. p. 681. * * * An agreement to pay losses is actually involved in the enterprise. But in several instances it has been held that where the contribution of a party to the adventure consists merely of services which are performed, he is not liable to his associates on account of financial losses sustained in the venture. Ibid. p. 694. (229 Miss. at 365-366; 91 So.2d at 261.)
Appellees rely upon the case of Tansil v. Horlock, 204 So.2d 457 (Miss.1967). In that case there was direct and positive evidence as to the existence and the terms of the contract under which the parties acted. In this regard the case is distinguishable from the case at bar. The citing of Sample v. Romine, supra,, by this Court in Tansil v. Horlock, supra, was to point out that it must be an agreement express or implied for sharing in the profits if a joint adventure is to be established.
In Lawler v. Skelton, 241 Miss. 274, 130 So.2d 565 (1961), this Court reviewed an agreement between Johnson, the owner of the plantation involved, and Skelton who managed the farming operations thereof. Johnson under the agreement was to receive twenty-five percent of the cotton raised and certain percentages of other crops. Johnson, the owner, retained certain residual rights or control over the crop operations. Skelton owned the equipment and hired the farm hands and managed the farming operations. Johnson paid one-fourth of the cost of insecticides to be applied on the crops. We held in that case, speaking through Justice Ethridge, that “under all the circumstances we conclude there was no joint venture or partnership between Johnson and Skelton as to the farming of the land.” We held this in spite of the fact that Johnson and Skelton were engaged on the plantation in a joint enterprise in raising cattle and the accident arose out of farming operations.
In passing, the appellants are domiciled in Louisiana and the laws of Louisiana are more strict than those of Mississippi in requiring proof of the various elements essential to constitute a joint venture. There are numerous cases which clearly establish this fact.
We are led to the inescapable conclusion that the appellees wholly failed to prove the necessary elements to establish a joint venture between S. D’Antoni, Inc. and Mydland Truck Lines, Inc. and therefore the trial court was incorrect in permitting this issue of fact to be submitted to the jury, and since the appellees failed to prove joint venture, the judgment against *908 S. D’Antoni, Inc. is reversed and judgment is entered here in favor of appellant, S. D’Antoni, Inc.
Insofar as the deposition of Mrs. Lord is concerned, the taking of which is wanting in full compliance with the statutes, nevertheless the taking of the deposition and the introduction thereof being merely cumulative, we hold, even though the taking of her deposition was irregular, nevertheless it did not constitute reversible error because the testimony therein was merely cumulative and was corroborated by other reliable witnesses. Insofar as the testimony of attorney J. O. Moss is concerned, though the court went somewhat afield in permitting attorney Moss to testify in explanation of the pictures and asked Mr. Moss if he had anything else he would like to say, we do not feel this constitutes reversible error. However, it is not necessary for a trial court to determine whether or not a witness has satisfied himself by his testimony. There is no merit in the assertion that reversible error was committed by the trial court in the granting of certain instructions. All of the instructions when read together accurately advise the jury of the applicable rules of law.
For the foregoing reasons, the case is affirmed as to appellants Mrs. Evelyn Free-land, Mr. Billy Ray Williams, and T. L. Mydland Truck Lines, Inc. and is reversed and judgment entered here for S. D’Antoni, Inc.
Affirmed as to appellants Mrs. Evelyn Freeland, Mr. Billy Ray Williams, and T. L. Mydland Truck Lines, Inc.; reversed as to appellant S. D’Antoni, Inc. and judgment entered here for S. D’Antoni, Inc.
RODGERS, P. J., and JONES, SMITH and SUGG, JJ., concur.