# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-IA-00167-SCT

*CYNTHIA B. ADAMS*

*v.*

*ANTHONY S. HUGHES, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/12/2015 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES DENNIS BOONE |
| | EDWARD J. CURRIE, JR. |
| ATTORNEYS FOR APPELLEE: | MARK ANTHONY LAMBERT |
| | JOHN CURTIS HALL, II |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 05/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. This is an interlocutory appeal from the Hinds County Circuit Court involving a premises-liability case. Cynthia Adams, one of the defendants in the case, filed a motion for summary judgment, which the trial court denied. Adams thereafter petitioned this Court for interlocutory appeal. A panel of this Court issued an order granting the petition and staying the trial court proceedings. *See **Adams v. Hughes**,* No. 2015-M-00167-SCT (Miss. March 5, 2015). Finding that Adams was entitled to summary judgment as a matter of law, we reverse the trial court's denial of summary judgment and render judgment in favor of Adams.

## BACKGROUND

¶2.     Plaintiff Anthony Hughes brought a negligence claim against multiple parties: BKB, LLC d/b/a the Electric Cowboy;[1] Jonathan Self, manager of the Electric Cowboy (hereinafter Electric Cowboy); and Adams, the owner of the property on which Electric Cowboy operates. Hughes alleges in his complaint that he was "attacked and assaulted by a third party assailant" at the Electric Cowboy on July 15, 2011.[2] Hughes claims that all the defendants "had either actual or constructive knowledge of the third party's violent nature or actual or constructive knowledge that an atmosphere of violence existed on the premises of the Electric Cowboy."

¶3.     At the time in question, Adams leased the premises to the Electric Cowboy pursuant to a written lease agreement. Following Adams's deposition during discovery, Adams filed a motion for summary judgment, arguing the following: Adams was an absentee landlord, who did not physically occupy, possess, or exercise control over the Electric Cowboy and/or the leased premises prior to or at the time of the incident in question; Adams did not frequent or visit the Electric Cowboy; Adams had no control or involvement in the operations or management of the Electric Cowboy; she was never employed by the Electric Cowboy; she did not supervise the Electric Cowboy, and she did not have the right to supervise the Electric Cowboy.

--------

[1] A night-club establishment located in Jackson, Mississippi.

[2] According to an incident/investigation report attached as an exhibit in Adams's motion for summary judgment, the incident occurred in the Electric Cowboy's parking lot, when Hughes and a friend were walking to their car. Hughes saw an individual whom he knew, and Hughes told the individual, "there would not be a fight tonight." When Hughes turned to walk away, the individual pushed Hughes, then picked up Hughes and "slammed" him onto the ground, dislocating Hughes's elbow.

¶4.    Hughes responded to Adams's summary judgment motion, arguing that Adams's contractual involvement with the Electric Cowboy, under the terms of the lease agreement, far exceeded the scope of an absentee landlord and essentially made her a joint venturer with the Electric Cowboy. Hughes based his argument primarily on a clause contained in paragraph 38 of the written lease agreement. This clause gives Adams the right to receive additional rent (above the base rent) based on six percent of the Electric Cowboy's gross sales and the right to inspect Electric Cowboy's books and records in order to determine whether additional rent might be applicable. Hughes argued that, based on the percentage rent clause, Adams is more like a joint venturer than an absentee landlord, and she thereby contractually possessed an element of control over the premises of the Electric Cowboy.

¶5.    The trial court denied Adams's summary judgment motion, summarily finding that genuine issues of material fact remained. Adams petitioned for interlocutory appeal, which this Court granted.

## ANALYSIS

**Whether the trial court erred in denying Adams's motion for summary judgment.**

¶6.    A trial court's grant or denial of summary judgment is reviewed *de novo*. ***Monsanto Co. v. Hall***, 912 So. 2d 134, 136 (Miss. 2005). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). "If any triable facts exist, the lower court's grant of a summary judgment will be reversed; otherwise

3

the decision will be affirmed." ***Miller v. Meeks***, 762 So. 2d 302, 304 (Miss. 2000). The evidence must be viewed in the light most favorable to the party opposing the motion. ***Davis v. Hoss***, 869 So. 2d 397, 401 (Miss. 2004). Only when the moving party has met its burden by demonstrating that no genuine issues of material fact exist should summary judgment be granted. ***Tucker v. Hinds County***, 558 So. 2d 869, 872 (Miss. 1990). "[W]here the party opposing the motion for summary judgment on a claim or defense upon which it bears the burden of proof at trial, and the moving party can show a complete failure of proof on an essential element of the claim or defense, other issues become immaterial and the moving party is entitled to summary judgment as a matter of law." ***Crain v. Cleveland Lodge 1532, Order of Moose, Inc.***, 641 So. 2d 1186, 1188 (Miss. 1994).

¶7.     Generally, Mississippi law requires three determinations in premises-liability cases: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty. ***Massey v. Tingle***, 867 So. 2d 235, 239 (Miss. 2004). There is no dispute that Hughes was an invitee. On the relevant duty of care, Mississippi's premises-liability caselaw dealing with third-party assault allegations applies. ***Kroger Co. v. Knox***, 98 So. 3d 441, 443 (Miss. 2012), provides the following:

> The law of torts is well understood. To recover on a negligence claim, a plaintiff must show that the defendant breached a particular duty owed to the plaintiff, and that the breach of duty proximately caused damages. And while it is true that those in control of real property have a duty, if reasonably possible, to remedy most dangerous conditions on their property and to warn of those they cannot eliminate, that duty presupposes the defendant knows, or should know, of the dangerous condition.
>
> Where the alleged dangerous condition is the threat of an assault, the requisite cause to anticipate the assault may arise from (1) actual or

4

constructive knowledge of the assailant's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence exists on the premises.

¶8.     Here, there is nothing in the record from which to analyze whether Adams had actual or constructive knowledge of (1) the assailant's violent nature; or (2) whether an atmosphere of violence exists on the premises of the Electric Cowboy. Nevertheless, the issue presented to the trial court in Adams's summary judgment motion is based solely on the question of whether Adams constitutes an absentee landlord, who did not exercise sufficient control of the premises so as to owe a duty to exercise reasonable care to protect Hughes from reasonable foreseeable injury at the hands of another.

¶9.     As reiterated in *Titus v. Williams*, 844 So. 2d 459, 466 (Miss. 2003), under Mississippi law, a landlord/lessor has no responsibility in keeping leased premises in safe condition in the absence of a contract to do so. *Id.* (citing *Wilson v. Allday*, 487 So. 2d 793, 796 (Miss. 1986), *overruled on other grounds*). "Mississippi common law places that duty squarely on the party who possesses or controls the property." *Titus*, 844 So. 2d at 466.

¶10.    In *Titus*, the family of a shooting victim brought a wrongful-death action against a convenience store, the store's landlord/property owner, and the city of Sardis, Mississippi, after Milton Titus was shot by a third party on the store's property. *Id*. at 462. Each defendant filed a motion for summary judgment. The landlord/property owner filed on the basis that he was an absentee landlord and owed no duty to the victim, and he had committed no form of negligence. The store filed on the basis that the victim was a trespasser, or at best a licensee on its premises, and the store therefore owed only a duty to refrain from willfully or wantonly injuring the victim. And the city filed on the basis that it was exempt from

5

liability for the performance of police duties unless its employees acted recklessly. *Id*. at 462. The trial court granted summary judgment in favor of all defendants. *Id*.

¶11. On appeal, this Court affirmed the trial court's decision in toto. The *Titus* Court found that the victim's status as an invitee, a licensee, or a trespasser was irrelevant based on the facts of the case. *Id*. at 467. This is because the victim knew the third party was armed based on a prior incident between the two earlier that evening on the store's premises, and thus the victim knew the possible danger of confronting the third party. *Id*. On these facts, the *Titus* Court held that "the highest standard of care that would be owed to anyone who comes onto someone else's land in Mississippi is to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not plain and in open view." *Id*. In Mississippi, the general rule of law is "that the duty to warn disappears entirely when it is shown that the injured person did, in fact, observe and fully appreciate the peril." *Id*. (citing *Ill. Cent. R.R. v. Crawford*, 244 Miss. 300, 315, 143 So. 2d 427, 431 (1962)). Accordingly, the store owed no duty to the victim to warn him of a situation which the victim "created himself and the danger of which he was well aware." *Id*. at 467-68.

¶12. In speaking to the landlord/property owner's duty, the *Titus* Court found as follows:

> First, the record is devoid of any evidence that Williams[, the landlord/property owner,] engaged in affirmative or active negligence in the operation or control of the business. There is no proof that Williams, the absentee landlord, was aware of Titus's presence upon the premises. Williams had no contractual duty to make repairs to the property. He did not occupy, exercise control over, or frequent the premises in question. When parties fail to allocate responsibility for keeping a leased premises in a safe condition through contract, Mississippi common law places that duty squarely on the

6

> party who possesses or controls the property. ***Wilson v. Allday***, 487 So. 2d 793, 796 (Miss. 1986). The Flash Store, not Williams, operated and controlled the convenience store. Therefore, liability, if any, attaches to the Flash Store rather than Williams. *See* ***Wilson***, 487 So. 2d at 796 ("[L]iability runs with possession and control of the property.").

*Id*. at 466.

¶13. Hughes argues that ***Titus*** is distinguishable both factually and legally because the plaintiff in ***Titus*** created the danger himself, and there was no question in ***Titus*** that the lessor was an absentee landlord who had no right of control of the premises and "no contractual duties to make repairs to the property." *Id*. at 465. Hughes argues that the lease agreement here, unlike in ***Titus***, reserves for Adams–apart from the rental-percentage provision–the right for her and "h[er] authorized agents" not only to show the property to potential buyers, but also a general "right of entry for repairs and maintenance," among other things. Hughes contends that the operative fact in this case is Adams's right to control, not Adams's choice of whether or not actually to exercise that right. And Hughes maintains that, based on the percentage rent clause contained in the lease agreement, Adams and Electric Cowboy are essentially joint venturers. We disagree.

¶14. First, the right of entry that the lease agreement reserved in Adams does not ascribe the possession and control necessary to impute to Adams the duty to protect Electric Cowboy's invitees from injury at the hands of others. Had Hughes been injured due to some structural defect on the premises that Adams had covenanted with the lessee to keep in repair, the case might be different. That, though, is not the case here.

7

¶15.   Second, the fact that the lease agreement contains a percentage-rent clause is of no moment in this instance.  In *Lawler v. Skelton*, 241 Miss. 274, 289-90, 130 So. 2d 565, 570 (1961), this Court addressed a personal-injury action in which the plaintiff contended that a lessor and lessee were joint venturers because the lease agreement between them provided the lessor a twenty-five percent interest in the lessee's cotton crop.  The *Lawler* Court found that, regardless of the percentage-rent clause, the lessor and lessee were not joint venturers or partners, but rather were landlord and tenant.  *Id*. at 289-90.  Thus, no liability could be placed upon the lessor for injuries allegedly sustained by the plaintiff resulting from aerial crop spraying of insecticides on the lessee's cotton fields.  *Id*. at 290.  The *Lawler* Court found that although the lessor retained certain residual rights of control over the farming operation, loaned the lessee money when the lessee needed it for the farming operation, and paid one-fourth the cost of insecticides to be applied on the cotton crop, the lessee was the one responsible for running and managing the farming operation.  *Id*. at 289-90.  The lessee hired the farmhands, selected the crop poisons, and employed the pilot.  The lease expressly provided that the parties were landlord and tenant, not partners, and the tenant had no authority to bind the landlord. *Id*.  The *Lawler* Court concluded that the lessor simply leased the farm to the lessee under traditional methods for such operations.  *Id*. at 290.

¶16.   Similarly, we find no joint venture or partnership between Adams and Electric Cowboy.  A joint venture is "an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge." *Freeland v. Henderson*, 252 So. 2d 899, 906 (Miss. 1971). To form a joint

venture, "there must be a joint proprietary interest and right of mutual control." *Id*. at 907. No evidence was presented showing that Adams and Electric Cowboy entered into such an agreement. Adams did not contribute her property or money to promote Electric Cowboy. Adams simply leased the property to Electric Cowboy under traditional commercial realty methods, which often entail percentage rent covenants. *Fletcher v. U.S. Rest*. *Props., Inc*., 881 So. 2d 333 (Miss. Ct. App. 2004); *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc*., 908 So. 2d 107 (Miss. 2005); *Polk v. Gibson Prods. Co. of Hattiesburg*, 257 So. 2d 225 (Miss. 1972). Adams does not frequent or visit the Electric Cowboy; she has no control or involvement in the operations or management of the Electric Cowboy; and she does not supervise the Electric Cowboy.

¶17.    Accordingly, we find that Adams owed no duty to protect Hughes from reasonable foreseeable injury at the hands of another. And the trial court erred in denying Adams's motion for summary judgment.

## CONCLUSION

¶18.    We reverse the trial court's denial of Adams's motion for summary judgment, and render judgment in favor of Adams. The stay entered by this Court as to this case on March 5, 2015, is hereby vacated.

¶19.    **REVERSED AND RENDERED.**

      **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND  MAXWELL, JJ., CONCUR.**