STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0938

IN THE MATTER OF
THE MENTAL HEALTH OF DERRICK COLE

Judgment Rendered: **DEC 2 7 2019**

\* \* \* \* \*

On Appeal from the
20th Judicial District Court
Parish of East Feliciana, State of Louisiana
No. 983157

The Honorable William G. Carmichael, Judge Presiding

\* \* \* \* \*

Laura Picard
Pineville, Louisiana
and
Henry Allyn Sale
Shreveport, Louisiana

Attorneys for Appellant,
Derrick Cole


Stephanie M. Borghardt
Neal R. Elliott Jr.
Baton Rouge, Louisiana

Attorneys for Appellee,
Louisiana Department of
Health, Office of
Behavioral Health

\* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY AND CRAIN,[1] JJ.

---

[1]     Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana Supreme Court.

**CRAIN, J.**

Derrick Cole appeals the trial court's April 5, 2019 judgment ordering his commitment to the Louisiana Department of Health (LDH). We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 20, 2018, the assistant clinical director for the Eastern Louisiana Mental Health System (ELMHS) filed a petition seeking Cole's judicial commitment. The petition alleged Cole was a resident of ELMHS and required further treatment due to mental illness. The trial court signed a judgment September 7, 2018, committing Cole to LDH's custody for a period not to exceed one hundred eighty days. Cole appealed and this court affirmed the judgment. *See Matter of Commitment of Cole*, 18-1760 (La. App. 1 Cir. 4/17/19), 276 So. 3d 601.

This court set forth the following pertinent factual and procedural history relative to the proceedings:

> At the time the commitment proceeding was filed, Cole was a twenty-nine-year-old male with a history of bipolar disorder, intermittent explosive disorder, and an intellectual disability. For approximately seven years, beginning January 21, 2010, Cole resided at Pinecrest Supports and Services in Pineville, Louisiana (Pinecrest), but the facility was no longer able to control his behavior. On March 31, 2017, he was admitted to Central State Hospital (Central) for stabilization. While at Central, Cole exhibited aggressive behavior toward the staff and was extremely impulsive, resulting in the facility's medical director filing a petition for judicial commitment on May 18, 2017, in the 9th Judicial District Court for Rapides Parish, Docket No. 5762 (9th JDC action). Cole remained at Central for approximately a year before he was discharged to a less restrictive environment.

> It is unclear from the record whether the less restrictive environment in which Cole was placed was a group home or his own apartment with support staff, as the record contains evidence as to both living arrangements. It is clear that pursuant to the Developmental Disability Law, [Louisiana Revised Statutes] 28:451.1-455.2, Heaven On Earth Network, Inc. (Heaven On Earth) provided Cole support in the less restrictive environment. Heaven On Earth eventually became unable to assist Cole due to his behavior. Cole exhibited aggressive and violent behavior, made threatening statements, and the police had to be called on several occasions. There was also evidence that Cole ran away, was involved in fights, became suicidal, drank chemicals, and threatened Heaven On Earth's staff. By correspondence dated July 12, 2018, Heaven On Earth notified Cole that it could no longer be his

2

provider due to his aggressive and violent behavior and that the last date it would provide services would be August 9, 2018. The plan coordinator, Medical Resource and Guidance, was also informed of this decision. Cole was further instructed of his right to appeal the decision. Medical Resource and Guidance attempted to find Cole another provider, but was unsuccessful.

Cole testified that after an altercation with the Heaven On Earth staff, the police were called and took him to Lake Charles Memorial Hospital (Lake Charles Memorial). Cole was subsequently admitted to Lake Charles Memorial pursuant to a Physician's Emergency Certificate (PEC) dated August 10, 2018, and a Coroner's Emergency Certificate (CEC) dated August 11, 2018, for refusing to take his medications, as well as hostility and homicidal threats to the group home staff. On August 17, 2018, Lake Charles Memorial requested that Cole be admitted to [ELMHS]. Cole was admitted to ELMHS pursuant to a PEC dated August 17, 2018, signed by Dr. Muhummad Ahmed, a board certified psychiatrist who treated Cole at ELMHS. Dr. Ahmed testified that Lake Charles Memorial's employees could not control Cole's behavior, noting in the PEC that Cole had a history of bipolar disorder, intermittent explosive disorder, and intellectual disability. A CEC was signed on August 18, 2018. On August 20, 2018, the assistant clinical director of ELMHS filed the current petition for judicial commitment in the 20th Judicial District Court, Parish of East Feliciana (20th JDC action).

Dr. Ahmed testified that when Cole arrived at ELMHS, he was extremely irritated and having paranoid and suicidal thoughts. Dr. Ahmed noted that Cole had a long history of bipolar disorder and cognitive impairment. Because of the violent and threatening statements Cole made while at the group home, at Lake Charles Memorial, and to Dr. Ahmed, Cole was assigned someone to be arms-length from him at all times. Cole eventually improved to the point that he only needed continuous visual observation, but he continued to act out and was involved in several fights. Dr. Ahmed reduced the continuous visual observation when Cole agreed not to act out. However, Dr. Ahmed testified that Cole remained impulsive and violent.

Dr. Ahmed further testified that bipolar disorder is a serious mental illness and that Cole is a danger to himself and others and is gravely disabled. Cole also suffers from cognitive impairment. Dr. Ahmed believed that Cole's violent, impulsive behaviors would continue and that he would not take his medication in a less restrictive environment.

Cole testified that he had lived at Pinecrest for seven years. He was transferred to Central after he had an incident that involved throwing chairs. He testified that security personnel then "ran over him" or "ran into him" with a John Deere all-terrain vehicle, causing him to scrape his arm resulting in treatment at a hospital. Cole stated that he was discharged from Pinecrest to Central involuntarily after he was forced to sign a piece of paper, even though he testified that he can

3

barely read. Central eventually discharged Cole, and he returned to his own apartment, with staff of Heaven On Earth. He stated that the staff either slept or left him on his own. He had numerous conflicts with the staff and claimed he sprayed a fire extinguisher at one of them who was trying to fight him. The police were called, and he was taken to Lake Charles Memorial. Lake Charles Memorial placed him in the Archer Institute, the psychiatric ward of the hospital. He became uncooperative and was transferred to ELMHS. Cole claims that a doctor at Lake Charles Memorial told him that he was discharged.

The trial court found that Cole suffers from a mental illness that causes him to be gravely disabled, dangerous to others, and dangerous to himself. Cole was committed to the custody of LDH. The trial court signed a judgment in accordance with its oral ruling on September 7, 2018, committing Cole to the custody of LDH . . . for a period not to exceed one hundred and eighty days. The judgment continued Cole's placement at ELMHS . . . until "appropriate placement options are available through [LDH]."

*Matter of Commitment of Cole*, 276 So. 3d at 604-06 (footnotes omitted).

On January 30, 2019, while that appeal was pending, the assistant clinical director for ELMHS filed a petition seeking Cole's judicial commitment for another one hundred eighty days, alleging Cole required further treatment because of mental illness that contributed or caused grave disability. The trial court again appointed Dr. Ahmed to examine Cole and submit a written report detailing his findings. Cole sought a stay of the proceedings pending resolution of the appeal and filed exceptions of no cause of action, no right of action, and *lis pendens*. Cole fax-filed a motion to appoint a physician for an independent medical opinion, and answer and reconventional demand. LDH filed a motion to quash four subpoenas issued to it at Cole's request.

The trial court held a hearing April 5, 2019, on the motion to quash, exceptions, and petition for judicial commitment. The trial court did not consider the fax-filed pleadings, stating they were without effect because the original pleadings were not filed with the clerk of court prior to the hearing. The trial court orally granted the motion to quash, overruled the exceptions, and, based on the evidence presented, ordered Cole's continued commitment. Specifically, the trial

court found Cole suffers from mental illness that renders him unsafe, dangerous to others, and gravely disabled. On the same day, the trial court signed a written judgment ordering Cole's commitment to LDH for a period not to exceed one hundred eighty days. The originals of the fax-filed pleadings were filed with the clerk of court later that day. On the motion for appointment of a physician for an independent medical opinion, the trial court wrote "DENIED" and noted the motion was moot because a judgment of commitment had been rendered. Cole now appeals.[2]

## DISCUSSION

### Lis Pendens

Cole contends the trial court erred in denying his exception of *lis pendens*, arguing the prior judgment ordering his commitment was pending before this court on appeal when the January 30, 2019 petition was filed.[3]

When two or more suits are pending in Louisiana courts between the same parties in the same capacities and are based on the same transaction or occurrence, the defendant may have all but the first suit dismissed by filing a declinatory exception of *lis pendens*. La. Code Civ. Pro. arts. 531, 925A(3). The test for *lis pendens* is whether a final judgment in the first suit would be *res judicata* in the second suit. *Aisola v. Louisiana Citizens Property Ins. Corp.*, 14-1708 (La.

---

[2]    The one-hundred-eighty-day commitment period provided in the judgment on appeal has expired. In response to this court's show cause order, the parties advised the state filed another petition for commitment, which prevented Cole's discharge. Because Cole remains in LDH's custody, we find the issues raised herein are not moot; therefore, we maintain this appeal. *See Cat's Meow, Inc. v. City of New Orleans, Dept. of Finance*, 98-0601 (La. 10/20/98), 720 So. 2d 1186, 1194 (instructing courts deciding whether a case is moot to consider whether there is a reasonable expectation the complained of violation will recur and whether there are unresolved collateral consequences); *In re C.C.*, 15-0140, 2015WL9435190, p.3 (La. App. 1 Cir. 12/23/15), *writs denied*, 15-2251 (La. 12/23/15), 184 So. 3d 687, 16-0197 (La. 3/4/16), 188 So. 3d 1055 (finding the appeal of a judgment ordering judicial commitment moot where the appellant was released from commitment without restriction, but recognizing conditional discharge would not render an appeal moot because onerous conditions continued to flow from the judgment on appeal).

[3]    Although the trial court's judgment does not address the exceptions, silence in a judgment as to any issue before the trial court is deemed a rejection of that demand or issue. The exceptions are thus deemed denied. *See Naramore v. Aikman*, 17-1621, 17-1622 (La. App. 1 Cir. 6/4/18), 252 So. 3d 935, 944.

5

10/14/15), 180 So. 3d 266, 269. As with the exception of *res judicata,* the critical inquiry is whether the second suit asserts a cause of action that arises out of the same transaction or occurrence that was the subject matter of the first suit. *Pumpkin Mobile Home Park, LLC v. Harrison,* 13-1086, 2014WL647398, p.3 (La. App. 1 Cir. 2/18/14), *writ denied,* 14-0828 (La. 6/13/14), 140 So. 3d 1193; *see also* La. R.S. 13:4231, comments–1990, comment (a).

Cole argues this second judicial commitment proceeding should have been dismissed because it was filed while the prior appeal raising "the exact issues" and involving the same parties was pending. While certainly related, the two commitment proceedings do not arise out of the same transaction or occurrence. This second judicial commitment proceeding seeks Cole's commitment for the one-hundred-eighty-day time period following expiration of the judgment that was the subject of the prior appeal, based on Cole's continued need for commitment. That is, both proceedings generally arise out of Cole's mental health needs, but are specific to the needs exhibited at different time periods.

Furthermore, Cole was committed pursuant to Louisiana's Behavioral Health Law, which authorizes both a devolutive appeal of an order of commitment, and for an extension of the commitment period by the filing of a new petition for commitment prior to expiration of the existing order of commitment. *See* La. R.S. 28:56A and D. Well-established principles of statutory interpretation undermine Cole's argument that the second commitment proceeding, expressly authorized by

6

the same statute authorizing his appeal of the judgment in the first proceeding, should have been dismissed.[4]

## No Cause of Action, No Right of Action, Commitment Procedure, and Motion to Quash

Cole maintains he should have been committed under the Developmental Disability Laws, rather than the Behavioral Health Laws, arguing this has resulted in the denial of disability services to which he is entitled. This was the basis for Cole's "Exception of No Cause/Right of Action," which the trial court denied based on the face of the petition. Cole contends the trial court erred in denying him an opportunity to present evidence before overruling his exception of no cause and no right of action, and erred in granting LDH's motion to quash the subpoenas issued for the purpose of eliciting evidence in support of his exceptions.

Cole similarly challenged the law applicable to his commitment in the prior appeal. After thorough analysis of the issue, this court concluded, "Both the Behavioral Health Law and the Developmental Disability Law provide for commitment of an individual with a combination of a mental illness and an intellectual disability. Because Cole has both a mental illness **and** a developmental disability, we find that the appropriate commitment procedure was used by LDH." *Matter of Commitment of Cole*, 276 So. 3d at 612. For the same reasons, we find no error in the argument raised again in this appeal.

---

[4] Legislation is the solemn expression of legislative will; thus, the interpretation of legislation is primarily the search for legislative intent. *In re Succession of Boyter*, 99-0761 (La. 1/7/00), 756 So. 2d 1122, 1128. The starting point for interpretation of any statute is the language of the statute itself, as the text of the law is the best evidence of legislative intent. *See* La. R.S. 1:4 and 24:177B(1); *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So. 3d 1065, 1075. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intent of the legislature in enacting it. *Harrah's Bossier City Investment Company, LLC v. Bridges*, 09-1916 (La. 5/11/10), 41 So. 3d 438, 447. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ. Code art. 10. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ. Code art. 12.

We further find no reversible error in the trial court's handling of the exception raising the procedural issue and ruling on the motion to quash. There is no single exception of no cause or right of action, such as Cole filed. *See Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612, 05-719 (La. 3/17/06), 929 So. 2d 1211, 1216. Although often confused and improperly combined, the peremptory exceptions of no cause and no right of action are separate and distinct. La. Code Civ. Pro. art. 927A(5) and (6). A primary difference is the exception of no right of action questions whether the particular plaintiff has a right to bring the suit, while the exception of no cause of action questions whether the law provides a remedy against a particular defendant. *See Badeaux*, 929 So. 2d at 1216-17; *State, by and through Caldwell v. Astra Zeneca AB*, 16-1073 (La. App. 1 Cir. 4/11/18), 249 So. 3d 38, 42, *writs denied*, 18-00766 (9/21/18), 252 So. 3d 899 *and* 18-0758 (La. 9/21/18), 252 So. 2d 904. Further, evidence may be introduced to support or controvert an exception of no right of action, but is not permitted to support or controvert an exception of no cause of action. La. Code Civ. Pro. art. 931; *Bannister Properties, Inc. v. State*, 18-0030, 18-0031, 18-0032, 18-0033 (La. App. 1 Cir. 11/2/18), 265 So. 3d 778, 786-87, *writ denied*, 19-0025 (La. 3/6/19), 266 So. 3d 902.

Louisiana is a fact-pleading state that values substance over form and requires courts to look beyond the caption of the pleadings in order to ascertain their substance and do substantial justice to the parties. *Pembo v. Pembo*, 17-1153 (La. App. 1 Cir. 6/28/19), 280 So. 3d 656, 659. Review of the pleading indicates, as Cole argues, that the exception challenged the law under which the commitment proceeding was brought. Cole does not challenge LDH's right to bring the suit or question whether LDH is a member of the class of persons that has a legal interest in his commitment. Consequently, the exception must be considered to be an exception of no cause of action, not an exception of no right of action. No evidence may be introduced at any time to support or controvert an exception of no cause of

8

action; rather, the exception is triable solely on the face of the petition and attached documents. *See* La. Code Civ. Pro. art. 931; *Dumas v. Board of Ethics*, 19-0289 (La. App. 1 Cir. 11/15/19), ___ So. 3d ___, ___ (2019WL6050037, p.2). The trial court did not err in ruling on the exception without evidence and Cole's arguments regarding the motion to quash are moot.

Cole also argues the trial court improperly admitted medical evidence over his objection based on the healthcare provider-patient privilege of Louisiana Code of Evidence article 510. This court thoroughly examined and rejected the same issue in the prior appeal. *See Matter of Commitment of Cole*, 276 So. 3d at 615-17. For the reasons set forth therein, we find no merit to the argument raised again in this appeal.

Finally, Cole contends the trial court erred in refusing to consider his reconventional demand and motion to appoint a physician for an independent medical exam, which were fax-filed two days prior to the hearing. Cole argues his attorney brought the original pleadings to be filed in open court and it is his procedural right to have the demands heard before moving forward with the judicial commitment.

Louisiana Revised Statute 13:850 permits filings by facsimile in civil actions, with the same force and effect as a physically-filed pleading, if the particular statutory requirements are met. Specifically, the original document identical to the facsimile filing must be delivered to the clerk of court within seven days, exclusive of legal holidays, and certain fees must be paid. La. R.S. 13:850B. At the time of the hearing, Cole had not complied with the statutory requirements for fax-filing by delivering the original documents to the clerk of court; therefore, we find no error in the trial court's refusal to consider the fax-filed pleadings.

## CONCLUSION

The trial court's April 5, 2019 judgment is affirmed. No costs are assessed in this pauper proceeding. *See* La. R.S. 28:56; *Matter of Commitment of Cole*, 276 So. 3d at 617; *In re C.C.*, 2015WL9435190 at p.4.

**AFFIRMED.**