# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00122-COA

**PATTON MEDICAL OF GULF COAST, INC.**         **APPELLANT**

**v.**

**MICHAEL RELLE, INDIVIDUALLY, AND**         **APPELLEES**
**ORTHOTIC & PROSTHETIC SPECIALISTS,**
**INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/2017 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JAMES KENNETH WETZEL GARNER JAMES WETZEL |
| ATTORNEY FOR APPELLEES: | BLEWETT W. THOMAS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART; AND THE JUDGMENT OF THE COUNTY COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS REINSTATED - 04/03/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND TINDELL, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. Patton Medical of Gulf Coast, Inc. ("Patton Medical") claims that it entered into a joint business venture with Michael K. Relle ("Relle Sr.") and Orthotic & Prosthetic Specialists, Inc. ("O&P") to furnish orthotics and prosthetics in the Mississippi Gulf Coast area. The business arrangement failed. Believing it was still owed a portion of the joint venture's profits, Patton Medical sued Relle Sr. and O&P in Harrison County Court, seeking

recovery under the parties' business venture agreement and under Mississippi's open-account statute, Mississippi Code Annotated section 11-53-81 (Rev. 2012).

¶2. On Relle Sr.'s motion, the county court granted summary judgment in his favor, finding Patton Medical could not establish a triable issue of fact on its claim that Relle Sr. was individually liable to it for unpaid profits. Having prevailed on all counts against him, including the open-account claim, Relle Sr. then moved for attorney fees under section 11-53-81. The county court granted Relle Sr.'s motion and awarded him $7,000 in attorney fees. The case proceeded to trial on Patton Medical's joint venture claims against O&P, and the jury returned a verdict for Patton Medical, assessing $101,316.69 in damages. The county court denied O&P's motion for a judgment notwithstanding the verdict ("JNOV motion").

¶3. The parties appealed the county court judgment and respective decisions against them to the Harrison County Circuit Court. The circuit court affirmed the county court's summary judgment in Relle Sr.'s favor, and its $7,000 attorney fees award under section 11-53-81. It reversed the county court's denial of O&P's JNOV motion and rendered judgment in O&P's favor.

¶4. Now on appeal to this Court, Patton Medical asserts that the circuit court (1) erred in granting O&P's JNOV motion, which reversed the county court's denial of that motion and reversed the jury verdict in Patton Medical's favor; (2) erred in affirming the county court's decision granting Relle Sr.'s motion for summary judgment; and (3) erred in affirming the county court's decision granting Relle Sr.'s motion for attorney fees brought pursuant to Mississippi's open-account statute.

¶5. Finding error in the circuit court's reversal of the county court's judgment on O&P's JNOV motion, we reverse and reinstate the county court jury verdict and $101,316.69 damages award in Patton Medical's favor because there was sufficient evidence to support its verdict and award. Finding no error in the circuit court's affirmance of the county court's summary judgment order in Relle Sr.'s favor and its related award of $7,000 in attorney fees under section 11-53-81, we affirm that aspect of the circuit court's judgment.

**FACTS**

¶6. Patton Medical is a medical supply business that sells orthotics and prosthetics and is located in Ocean Springs, Mississippi. Its principals are Jay Rubenstein and Keith Wade. In April 2010, Patton Medical's certified prosthetist gave notice. Neither Rubenstein nor Wade were certified orthotists or prosthetists at the time. Patton Medical needed a certified orthotist/prothetist to continue serving its patients, so Rubenstein and Wade weighed various options to fill that void. They ultimately decided to contact Relle Sr., then president of O&P, about Patton Medical's need to associate a licensed orthotist and prosthetist to treat its clients.

¶7. Relle Sr. and his son, Michael S. Relle ("Relle Jr."),[1] worked as O&P's certified practitioners, both were licensed to provide orthotic and prosthetic services. O&P's primary facility is in Covington, Louisiana.

¶8. Rubenstein, Wade, Relle Sr., and Relle Jr. had their first meeting in Slidell, Louisiana

---

[1] For ease of reference the Court will refer to the Relles as Relle Sr. and Relle Jr., though technically Michael S. Relle is not a junior because he has a different middle name.

to discuss O&P and Patton Medical doing business on the Gulf Coast. In late April 2010 these individuals met a second time. Relle Sr. and Relle Jr. traveled to Ocean Springs to view Patton Medical's facilities and examine one of Patton Medical's clients.

¶9. According to Patton Medical, Relle Sr. participated in these meetings both individually and on behalf of his company, O&P. Relle Sr., on the other hand, contends he participated solely on O&P's behalf as its president.

¶10. According to the deposition testimony of Relle Sr. and the testimony of Patton Medical's principals, Wade and Rubenstein, at the second meeting Patton Medical, O&P, and, according to Patton Medical, Relle Sr., consummated an oral agreement to do business together on a temporary basis to see whether O&P could meet Patton Medical's needs. The parties agreed that there would be a 50/50 split of the profits from the business.

¶11. The evidence in the record reflects that the parties also agreed to the following division of responsibilities:

| Patton Medical's Responsibilities | O&P's Responsibilities |
|---|---|
| supply patients | supply a prosthetist once a week to see patients at the Patton Medical Ocean Springs facility |
| provide the facility for seeing patients | provide patient billing, technical support, purchasing, and accounting services |
| perform marketing and sales | cover warranty items |
| secure medical information for patient charts | |

¶12. According to O&P, Patton Medical was responsible for fabricating (manufacturing) the orthotics and prosthetics. Patton Medical did start off sending someone to O&P's facility

4

to do the fabrication for a few weeks. After about a month, however, O&P told Patton Medical it would take over the fabrication at O&P. Patton Medical agreed, and O&P did the fabricating from that point forward.

¶13. The business venture continued for four or five months. During this time O&P had business cards made for Rubenstein and Wade, identifying them as "practice managers" under O&P's name. In his deposition, which was read at trial, Relle Sr. admitted the business cards were prepared in furtherance of the oral agreement to do a joint venture with Patton Medical. O&P also hired another orthotist/prosthetist to work primarily with Patton Medical. O&P received all payments from billings, periodically provided an accounting to Patton Medical, and paid Patton Medical over $196,000 in 2010. Though, as noted, the parties agreed that there would be a 50/50 split of the profits; they ultimately disagreed on whether some costs, primarily fabrication costs, should be deducted as expenses before dividing the profits. According to Patton Medical, the profits were to be split after subtracting the cost of component goods. The record shows that the cost of component goods did not include fabrication costs.

¶14. According to O&P, Patton Medical was responsible for fabrication, and, under that scenario, it would receive 50% of the profits. O&P asserts that when Patton Medical was unable to fulfill this responsibility, O&P took over fabrication. Taking over fabrication caused O&P to incur these costs. The record shows that at this point, O&P then began subtracting the fabrication costs from profits before the 50/50 split.

¶15. Both Patton Medical's principals, Rubenstein and Wade, testified at trial that there

5

was never an agreement that either company would charge fabrication costs against the income derived in the business. The jury also heard testimony from Relle Sr. (via his deposition read at trial) and Relle Jr. that they did not recall advising Patton Medical that O&P would deduct fabrication costs in the expense calculation. Relle Jr. also testified, however, that when Patton Medical agreed to have O&P do the fabrication, the parties never discussed that O&P would assume the fabrication costs.

¶16. The record reflects that before the end of 2010, O&P terminated the parties' oral agreement to supply orthotics and prosthetics. O&P described several reasons for termination, including, among other reasons, patient overload that O&P could not service, and Patton Medical's inability to do the fabrication, which further burdened O&P's limited resources. The last payment O&P made to Patton Medical was in November 2010.

¶17. When the periodic accountings and payments stopped, Patton Medical repeatedly tried to get in contact with O&P regarding the status of payments, account receivables, and expenses. Patton Medical received no satisfactory response from O&P, so it hired an attorney who then sent a demand letter to O&P under Mississippi's open-account statute. In that demand letter Patton Medical sought "to collect an open-account with your firm . . . for funds owed to Patton Medical . . . for work performed for your company." There was no mention of Relle Sr.'s potential individual liability in the demand letter.

¶18. Patton Medical was unsuccessful in obtaining a satisfactory response to its demand letter, so it sued O&P and Relle Sr. Patton Medical sought to recover its remaining share of profits under the parties' business venture and also sought to recover for an open-account

6

under section 11-53-81.

¶19.    In its answer, O&P denied it was liable to Patton Medical on an unpaid account. Likewise, in his answer, Relle Sr. denied that he was personally or individually liable to Patton Medical on an unpaid open-account.   As for the joint venture claim, O&P acknowledged that Patton Medical's complaint concerned a joint venture between O&P and Patton Medical but denied that Patton Medical was due any additional sums earned through the joint business venture and affirmatively stated that O&P had previously paid Patton Medical one-half of the joint venture's net profits.  Relle Sr. similarly acknowledged the existence of a joint venture between O&P and Patton Medical in his answer but made no acknowledgment or admission as to the existence of a joint venture between himself, personally, and Patton Medical.  Additionally, the evidence in the record showed that during his deposition, Relle Sr. admitted to the existence of a joint venture between O&P and Patton Medical.

**Dismissal of Relle Sr.**

¶20.    Before filing his answer, Relle Sr. moved to dismiss Patton Medical's complaint against him under Mississippi Rule of Civil Procedure 12(b)(6) asserting that it failed to state a claim against him.  This motion was eventually converted to a summary judgment motion when both parties submitted matters outside the pleadings during briefing.

¶21.    After a hearing and considering all briefing before it, the county court granted summary judgment in Relle Sr.'s favor on January 14, 2013.  This order was not certified as a final judgment under Mississippi Rule of Civil Procedure 54(b).  Nevertheless, Patton

7

Medical appealed this ruling to the circuit court on February 11, 2013.

**Trial on Patton Medical's claims against O&P**

¶22.    Beginning January 22, 2013, the case proceeded to a two-day trial on Patton Medical's claims against O&P for its remaining share of profits under the parties' joint venture. At the close of Patton Medical's case, O&P moved for a directed verdict, arguing that Patton Medical had not established the existence of a joint venture under Mississippi law. O&P also argued that it was impossible for Patton Medical to prove that it had any degree of control over patient treatment because, for it to do so, would violate Mississippi law governing the practice of orthotics and prosthetics, namely Mississippi Code Annotated section 73-22-3 (Rev. 2017). The county court denied O&P's directed verdict motion.

¶23.    The jury subsequently returned a verdict for Patton Medical for $101,316.69 on January 24, 2013. Judgment for Patton Medical was entered the same day. O&P then moved for a JNOV, re-asserting its arguments that Patton Medical produced insufficient evidence to establish the elements necessary to form a joint venture. Additionally, Relle Sr. moved for attorney fees as the prevailing party on an open-account lawsuit brought under section 11-53-81.

**The county court's final judgment and the parties' appeal to the circuit court**

¶24.    After hearing and reviewing all briefing before it, the county court denied O&P's JNOV motion and granted Relle Sr.'s motion for attorney fees but reduced the $11,758.50 attorney fees request to $7,000, finding this to be reasonable compensation. It entered its final judgment on these issues on July 19, 2013. Both parties timely appealed to the circuit

8

court, with O&P appealing the denial of its JNOV motion and with Patton Medical appealing the award of attorney fees under section 11-53-81 in Relle Sr.'s favor.

¶25.    The county court's final judgment did not mention its January 14, 2013 decision granting summary judgment in Relle Sr.'s favor, nor did Patton Medical renew its notice of appeal on the January 14 order when the county court entered its final judgment in July 2013. The parties jointly moved to consolidate all their appeals, however, including Patton Medical's appeal of Relle Sr.'s dismissal. The county court granted the parties' joint motion to consolidate the appeals on December 2, 2013. The county court record was transmitted to the circuit court on October 10, 2014.

**The circuit court's final judgment and Patton Medical's appeal to this Court**

¶26.    In December 2016, the circuit court entered findings of fact and conclusions of law on the two issues appealed by Patton Medical, affirming the county court's summary judgment entered in favor of Relle Sr., individually; and affirming the county court's $7,000 attorney fees award to Relle Sr. under Mississippi's open-account statute. On that same date the circuit court entered separate findings of fact and conclusions of law reversing the county court's denial of O&P's JNOV motion and rendering judgment in O&P's favor. On January 20, 2017, the circuit entered its final judgment on these rulings. Patton Medical timely appealed. As set forth below, applying the controlling standard of review to the evidence as a whole in the light most favorable to the verdict, there was sufficient evidence to support the jury's verdict and award of damages and the county court's judgment.[2]

---

[2] As the Mississippi Supreme Court has held:

9

**DISCUSSION**

**I.      The circuit court's granting of O&P's JNOV motion and rendering judgment in O&P's favor**

¶27.     Patton Medical contends that the circuit court erred in granting O&P's JNOV motion which reversed the county court's denial of that motion and the jury verdict in Patton Medical's favor. On appeal, Patton Medical primarily argues that in reversing the county court's decision, the circuit court improperly relied upon section 73-22-3, which, as noted above, governs the licensing and regulation of the practice of orthotics and prosthetics. Patton Medical also contends that the jury heard ample evidence to find that a joint venture existed between it and O&P.

¶28.     "The standard of review for the grant or denial of a motion for a JNOV is de novo." *Wilty v. Alpha*, 99 So. 3d 830, 833-34 (¶18) (Miss. Ct. App. 2012) (citing *InTown Lessee Assocs. v. Howard*, 67 So. 3d 711, 718 (¶22) (Miss. 2011)). A motion for [a] JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." *InTown Lessee Assocs.,* 67 So. 3d at 718 (¶22). In making this determination, the appellate court is to "consider the evidence in the light most favorable to the appellee, giving the party the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Id.* When presented

> Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.

*Entergy Mississippi, Inc. v. Bolden*, 854 So. 2d 1051, 1054 (¶6) (Miss. 2003).

with a motion for a JNOV, both the trial court and the appellate court face "the same question—whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *Id.*

### Overview of Patton Medical's joint venture claim and the applicable law

¶29. In this case, Patton Medical claims as follows: that it entered into a joint venture with O&P; that the parties agreed that the profits were to be split equally between Patton Medical and O&P; and that O&P failed to pay Patton Medical the amounts due it under the joint business venture. The county court instructed the jury that if it found by the preponderance of the evidence that "there was a joint venture entered into between the parties and that [Patton Medical] is entitled to one-half of the profits, then you shall return a verdict for [Patton Medical] in the amount that you deem [Patton Medical] is owed for its furtherance of the joint venture."

¶30. To guide it in making this decision, the county court instructed the jury on the elements necessary to create a joint venture. Under Mississippi law, "a joint venture [is] an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill[,] and knowledge." *Pittman v. Weber Energy Corp.*, 790 So. 2d 823, 826 (¶10) (Miss. 2001) (quoting *Hults v. Tillman*, 480 So. 2d 1134, 1142 (Miss.1985)). Further, a joint venture "exists when two or more persons combine in a joint business enterprise for their mutual benefit with an understanding that they are to share in profits or losses and each to have a voice in its management." *Pittman*, 790 So. 2d at 826 (¶10) (quoting *Hults*, 480 So. 2d at 1142) (emphasis omitted). In order to form a joint

11

venture, "there must be a joint proprietary interest and right of mutual control." *Adams v. Hughes*, 191 So. 3d 1236, 1242 (¶16) (Miss. 2016) (other citation omitted). Finally, "actual intent to form a joint venture is essential." *Hults*, 480 So. 2d at 1143.

¶31. The record contains ample evidence supporting Patton Medical's claims of a joint venture and the jury's related award of damages. This includes the deposition testimony of Relle Sr., which was read at trial, wherein he admitted to the existence of a joint venture and to an agreement to a 50/50 split of the profits. Wade and Rubenstein also testified that the parties agreed to do business together as a joint venture and that they agreed to share the profits on a 50/50 split. The crux of the dispute between the parties pertained to whether the fabrication costs were to be deducted from Patton Medical's or O&P's portion of the profits. The jury reached a verdict in Patton Medical's favor, and awarded Patton Medical $101,316.69 in damages. Even though there was sufficient evidence supporting the county court jury verdict and damages award, the circuit court reversed the verdict based upon an erroneous application of the law. The circuit court found that Patton Medical failed to meet both the intent and mutual control elements of its joint venture claim. For the reasons discussed below, we find that the circuit court's findings of fact as to the intent and mutual control elements were erroneous.

### *The intent element of Patton Medical's joint venture claim*

¶32. In reviewing the county court's denial of O&P's JNOV motion, the circuit court was bound by the same standard of review that this Court must apply. To briefly reiterate, we must review the evidence in the light most favorable to Patton Medical and decide "whether

12

the evidence, as applied to the elements of [Patton Medical's] case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *See InTown Lessee Assocs.*, 67 So. 3d at 718 (¶22) (internal citations and quotations omitted).

¶33. The circuit court's findings of fact and conclusions of law reflect that it did not apply the controlling standard of review in determining that Patton Medical did not meet the "intent" element of its joint venture claim. Instead, the circuit court reweighed the evidence and found that Patton Medical failed to establish by a preponderance of the evidence that the parties intended to form a joint venture. The circuit court concluded that the parties did not intend to form a joint venture because their agreement lacked specificity, and the parties entered their agreement on a trial basis.

¶34. The circuit court erred in substituting its judgment for that of the jury.[3] As stated, applying the proper review standard, the record reflects that there was substantial evidence to support the jury's verdict in this case.[4]

¶35. As detailed in the fact section above, the jury heard evidence that O&P and Patton Medical agreed to a joint business enterprise in which Patton Medical would supply the patients, a facility to see the patients, and marketing and sales. O&P would supply an orthotist/prosthetist once a week to see patients at the Patton Medical Ocean Springs facility, and it would provide patient billing, technical support, purchasing, and accounting services. The jury also heard testimony from both O&P and Patton Medical that they would split the

---

[3] *Wilty v. Alpha*, 99 So. 3d 830, 834 (¶¶20-21) (Miss. Ct. App. 2012) (citing *Patterson v. Liberty Assocs.*, 910 So. 2d 1014, 1022 (¶24) (Miss. 2005)).

[4] *InTown Lessee Assocs.*, 67 So. 3d at 718 (¶22).

13

profits 50/50. The joint venture continued for four to five months with the parties performing these responsibilities. During this time O&P also purchased business cards for Rubenstein and Wade under O&P's name, and O&P hired another orthotist/prothetist to work primarily with Patton Medical. O&P paid over $196,000 to Patton Medical in 2010. Regarding damages, Wade testified at length explaining the additional amounts Patton Medical believed that it was owed.

¶36. Finally, even if the parties agreed to try the arrangement on a trial basis, that would not constitute grounds for finding a lack of intent. The Mississippi Supreme Court has explicitly recognized that a joint venture is generally for a limited or shorter duration than a typical partnership. *See, e.g.*, *Hults*, 480 So. 2d at 1142. In short, the jury heard legally sufficient evidence supporting the intent element of Patton Medical's joint venture claim.[5]

### *The mutual control element of Patton Medical's joint venture claim*

¶37. In ruling on the county court appeal, the circuit court, in its findings, also erroneously determined that Patton Medical did not present any evidence supporting the mutual control element necessary to find that a joint venture was formed. The circuit court reached this conclusion by relying on section 73-22-3; particularly its mandate that "the measuring, fitting, adjusting and approval of any orthotic or prosthetic device furnished to a patient shall be performed only under the direct supervision of a board certified orthotist [for orthotics]. . . or board certified prosthetist [for prosthetics]." Miss. Code Ann. § 73-22-3(3).

¶38. As noted above, neither Wade nor Rubenstein were certified in orthotics or

---

[5] *InTown Lessee Assocs.*, 67 So. 3d at 718 (¶22).

14

prosthetics, and Wade testified at trial that they always were under the direction of O&P's certified practitioners when working with orthotic or prosthetic patients. Based on this testimony, the circuit court concluded that Patton Medical did not present evidence that it exercised the requisite mutual control over patient treatment because its principals could not treat patients independently. The circuit court further found that any venture Patton Medical formed with O&P would be void as a matter of law because to do so would require Patton Medical to provide services it could not legally provide without violating section 73-22-3(3). After reviewing the record, the Court finds that the circuit court's conclusions on this issue are erroneous.

¶39. First, the circuit court impermissibly substituted its judgment for that of the jury on this issue and erroneously applied section 73-22-3(3) to the joint venture. In its opinion on O&P's appeal, the circuit court found that "it appears that the jury did not follow the county court's instructions regarding the necessity that the proponent of a joint venture prove its right to exercise mutual control over the purpose of the joint venture." The record reflects, however, no question as to the jury's compliance with the county court's instructions, and O&P raises no issue as to the instructions given. Rather than determining whether evidence in the record supported the jury verdict, the circuit court, instead, determined that Patton Medical did not prove the mutual control element of its joint venture claim, and the circuit court further found that the jury ignored evidence showing Patton Medical could not do so.

¶40. As an initial matter, jurors are presumed to follow the trial judge's instructions. *Ivy v. Gen. Motors Acceptance Corp.*, 612 So. 2d 1108, 1113 (Miss. 1992); *Goodyear Tire &*

15

*Rubber Co. v. Kirby*, 156 So. 3d 281, 308 (¶82) (Miss. Ct. App. 2009). More importantly, as noted, the record reflects no indication that the jurors failed to follow the instructions they were given. Patient care was but one aspect of the joint venture between Patton Medical and O&P. Mississippi law does not require that every party to a joint venture exercise control over every aspect of the business enterprise. In *Putt v. Ray Sewell Co.*, 481 So. 2d 785, 786-87 (Miss. 1985), for example, the Mississippi Supreme Court held that "[t]here was more than sufficient evidence for a reasonable jury to find the existence of a joint business venture between the parties" where one party provided the capital and advice, while the other two parties provided "the skill and labor needed in the actual operation." *See also Braddock Law Firm, PLLC v. Becnel*, 949 So. 2d 38, 51 (¶48) (Miss. Ct. App. 2006) (finding parties had formed a joint venture and the mutual control element was met where one party did the negotiating while the other group handled the administrative work).

¶41.    It is true that the control element is not satisfied where a party has "**no** control or involvement in the operations or management of the [alleged joint venture]." *Adams*, 191 So. 3d at 1242 (¶16) (emphasis added); *see also Pittman*, 790 So. 2d at 827 (¶11). However, the evidence in the record reflects that this is not the case here. The joint venturers need only have a "voice in the management," *Pittman*, 790 So. 2d  at 826 (¶10), and the jury heard ample evidence regarding the parties' respective responsibilities and the contributions that each made towards operating and managing the business enterprise as a whole.

¶42.    Second, we find no support for the circuit court's conclusion that a joint venture between Patton Medical and O&P would be void as a matter of law under section 73-22-3.

16

This statute does not prohibit the association of certified orthotists or prosthetists with non-licensed persons. Indeed, the act broadly defines "person" as "any individual, corporation, partnership, association[,] or other organization." Miss. Code Ann. § 73-22-1(e) (Rev. 2017). Regarding section 73-22-3(3) in particular, this subparagraph simply requires that whenever a "person" (here the joint venture between O&P and Patton Medical) utilizes an orthotist or prosthetist in connection with the "person's" business, all patient care must be done under the direct supervision of the certified orthotist or prothetist. As Wade's testimony shows, Patton Medical complied with this requirement.[6]

¶43. In sum, and in returning to the applicable standard of review, the evidence before the jury was not so indisputable or deficient that the need for a jury was obviated on either the intent or the mutual control elements of Patton Medical's joint venture claim. The circuit court erred in substituting its judgment "for that of the jury when reasonable jurors could differ on the verdict from the evidence presented." *Wilty*, 99 So. 3d at 834 (¶21). We also find there is no basis for holding that section 73-22-3 would render a joint venture between Patton Medical and O&P void as a matter of law. We therefore reverse the circuit court's judgment granting O&P's JNOV motion and reinstate the jury's verdict and county court's

_____

[6] The circuit court also made the conclusory statement in its opinion on O&P's appeal that any contract providing that Patton Medical was entitled to share professional fees would be unenforceable. The cases the circuit court relied upon to support this proposition do not apply. They concern conduct explicitly prohibited by rule, *Attorney U v. Mississippi Bar*, 678 So. 2d 963 (Miss. 1996) (Mississippi Rules of Professional Conduct prohibiting a fee-splitting agreement), or by statute, *Bank of New Mexico v. Freedom Homes, Inc.*, 612 P.2d 1343, 1344 (N.M. Ct. App. 1980) (statute prohibiting an unlicensed person from recovering real estate commissions). In contrast, section 73-22-3 contains no language prohibiting profit-sharing between certified orthotists or prosthetists and non-licensed persons. The circuit court's conclusion on this point is erroneous.

17

judgment in Patton Medical's favor.

¶44.   As for the amount of damages the jury assessed, we note that O&P did not seek remittitur in the county court.  Likewise, it did not raise this issue on appeal to the circuit court or before this Court.  As such, O&P did not preserve any claim for remittitur, and the record reflects that there was substantial evidence to support the jury's verdict for $101,316.69.  We therefore affirm its award.

**II.    The circuit court's affirmance of the county court's decision granting Relle Sr.'s motion for summary judgment**

¶45.   Patton Medical contends that the circuit court erred in affirming the county court's decision granting Relle Sr.'s motion for summary judgment because it had presented sufficient evidence to create genuine issues of material fact whether Relle Sr. was individually liable for unpaid profits owed to Patton Medical.  Before addressing Patton Medical's contentions on the merits of this issue, we first address the sufficiency of Patton Medical's premature notice of appeal to the circuit court on the county court's summary judgment order.  As noted above, this order was entered on January 14, 2013, and it was not certified as a final judgment.  Nevertheless, Patton Medical appealed this ruling to the circuit court on February 11, 2013.

¶46.   Though all issues before the county court became ripe for appeal when it entered its final judgment on July 19, 2013, Patton Medical did not renew or refile its notice of appeal. Subsequently, however, the parties filed a joint motion to consolidate all their appeals, including this appeal, and the county court granted their motion. The circuit court affirmed the county court's summary judgment in Relle Sr.'s favor and entered its final judgment on

18

all issues before it on January 20, 2017. Patton Medical timely appealed.

¶47.    The Mississippi Supreme Court addressed a similar situation in *Mallery v. Taylor*, 792 So. 2d 226, 228 (¶¶7-9) (Miss. 2001), and applied the doctrine of retroactive validation to find that the plaintiffs' premature notice of appeal was sufficient to confer jurisdiction on the appellate court once a final judgment was entered in the matter. In that case, plaintiffs prematurely appealed the trial court's order dismissing all claims except their claim under the Mississippi Tort Claims Act (MTCA). *Id.* at 228 (¶8). A final order was entered thirteen days later dismissing the MTCA claim. *Id.* Plaintiffs did not file another notice of appeal. *Id.*

¶48.    Despite the fact that the case did not become ripe for appeal until entry of the final judgment on all issues, the Court applied the retroactive validation doctrine. *Id.* at 228 (¶9). The Court determined that the appellees were not prejudiced by the premature notice and applying the doctrine would not do "violence to [the] orderly judicial process" under the circumstances. *Id.*

¶49.    The same analysis applies here. O&P was not prejudiced by Patton Medical's premature notice of appeal to the circuit court on the Relle Sr. summary judgment order. The parties, in fact, jointly moved to consolidate all their appeals, including Patton Medical's appeal on the Relle Sr. summary judgment order, and the county court granted this motion. Additionally, no action took place in the circuit court on this appeal until all issues were before it. Applying the doctrine here does not disrupt the orderly judicial process. The circuit court has ruled on this issue, and Patton Medical timely appealed to this Court.

19

¶50. We now address Patton Medical's contentions on the merits of this issue and the applicable standard of review. This Court reviews the grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to Patton Medical, the party opposing summary judgment. *Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Relle Sr., as the movant, "bears the burden of persuading the trial judge that . . . (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." *Davenport v. Hertz Equip. Rental Corp.*, 187 So. 3d 194, 198 (¶10) (Miss. Ct. App. 2016) (quoting *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990)). Once Relle Sr. meets his burden, however, Patton Medical, as the non-movant, is "required to bring forward significant probative evidence demonstrating the existence of the triable issue of fact." *See Banks ex rel. Banks v. Sherwin-Williams Co.*, 134 So. 3d 706, 710 (¶10) (Miss. 2014). "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Karpinsky*, 109 So. 3d at 89 (¶11).

¶51. Here the county court granted summary judgment in Relle Sr.'s favor, finding Patton Medical failed to establish a triable issue of fact on its claim that Relle Sr. was individually liable to it for profits not paid to Patton Medical under the parties' joint venture. The circuit court affirmed.

¶52. Patton Medical contends that these decisions should be reversed because Relle Sr.'s discussions with Rubenstein and Wade about forming the joint venture create genuine issues

of material fact as to Relle Sr.'s individual liability. After reviewing the record, we find that no genuine issue of material fact exists on this issue. For the reasons addressed below, we affirm summary judgment in Relle Sr.'s favor.

¶53. In support of his motion to dismiss Patton Medical's claims against him, Relle Sr. submitted his affidavit in which he denied any independent representation or commitments to Patton Medical. Relle Sr. also stated in his affidavit that there was no account between O&P and Patton Medical and that he signed no agreement in which he would be independently liable to Patton Medical. After discovery, Relle Sr. supplemented his motion with testimony from Wade's 30(b)(6) deposition showing that Patton Medical had no documents establishing Relle Sr.'s personal liability and that Wade had no recollection of meeting with Relle Sr. in his individual capacity as to this joint venture.

¶54. In attempting to rebut this evidence, Patton Medical relies on deposition testimony from Relle Sr., Wade, and Rubenstein regarding the formation of the joint venture. Like both the county and circuit courts, we find no indication or evidence in any of that testimony to support the assertion that Relle Sr., who was president of O&P at all relevant times, was speaking as an individual, rather than on behalf of the corporation. Throughout his deposition, in fact, Relle Sr. repeatedly spoke in terms of **O&P**'s responsibilities and actions with respect to the parties' joint venture.

¶55. Similarly, Wade's testimony that Relle Sr. "said that . . . we have his word as a man that this will be taken care of, if not by his company, by him" does not support Patton Medical's claim that Relle Sr. is individually liable to it on an open-account or on any other

21

basis.  As the both the county court and circuit court held, this oral statement does not bind Relle Sr. individually to pay a corporate debt.  It is barred by the statute of frauds.  *See* Miss. Code Ann. § 15-3-1(a) (Rev. 2012)  (requiring a signed writing to support any action "upon any special promise to answer for the debt or default or miscarriage of another person"); *see also Carolina Transformer Co. v. Anderson*, 341 So. 2d 1327, 1330 (Miss. 1977) (explaining that "the situation contemplated by the statute of frauds is a gratuitous promise by a third party to pay a creditor for debts of the debtor.").

¶56.    Patton Medical also relies on statements made by Relle Sr. in his affidavit and in his answer as support for finding Relle Sr. individually liable.  In both his affidavit and his answer, however, Relle Sr. merely states that **O&P** agreed to enter into the joint venture, not that he, personally, was involved.  These statements reflect no assumption of individual liability by Relle Sr.

¶57.    Finally, as both the county and circuit courts also observed, Patton Medical presented no proof that Relle Sr., individually, ever received profits from the joint venture.  "In simplest form, a joint venture can be defined as a single purpose partnership, whereby the joint venturers undertake a single project for profit."  *Duggins v. Guardianship of Washington Through Huntley*, 632 So. 2d 420, 427 (Miss. 1993).  Profit sharing "is an essential element of partnership," *Smith v. Redd*, 593 So. 2d 989, 994 (Miss. 1991), and, likewise, "is essential" in determining the existence of a joint venture.  *Hults*, 480 So. 2d at 1142.  Though the record reflects that Patton Medical and O&P agreed to split profits 50/50, we find no proof that Relle Sr., individually, received or would receive profits from the joint

22

venture. Without this proof, Patton Medical's joint venture claim against Relle Sr. fails for this additional reason.

¶58. For these reasons, we affirm summary judgment in Relle Sr.'s favor.

**III.** **The circuit court's affirmance of the county court's decision granting Relle Sr.'s motion for attorney fees brought pursuant to Mississippi's open-account statute**

¶59. As further detailed below, Patton Medical contends that the circuit court erred in affirming the county court's decision granting Relle Sr.'s motion for attorney fees brought pursuant to Mississippi's open-account statute because (1) the county court did not have jurisdiction to hear and decide the motion; and (2) Relle Sr. did not prevail on an open-accounts claim, so he was not entitled to attorney fees under the statute. We find both of Patton Medical's contentions without merit and affirm the circuit court's decision affirming the county court's $7,000 attorney fees award for the reasons set out below.

¶60. After obtaining summary judgment on Patton Medical's claims against him, Relle Sr. moved for attorney fees under section 11-53-81 because he was sued on an open-account and prevailed in the lawsuit against him. The county court granted Relle Sr.'s motion, finding it had jurisdiction to do so and was authorized to do so because the statute specifically provides that a prevailing defendant sued on an open-account "shall" be entitled to reasonable attorney fees. Applying the "lodestar" method found in *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 520-22 (¶¶78-82) (Miss. 2007), the county court reduced the requested fees to $7,000, finding this to be reasonable compensation. The circuit court affirmed.

23

¶61. As it did before the county and circuit courts, Patton Medical asserts two arguments opposing the attorney fees award. It first contends that after it filed its February 11 notice of appeal on the county court's January 14 summary judgment order, the county court lacked jurisdiction to take any further action relating to that issue. This issue includes, according to Patton Medical, determining whether Relle Sr. was entitled to attorney fees under the Mississippi open-account statute. We acknowledge that whether the county court had proper jurisdiction to hear and decide Relle Sr.'s motion for attorney fees is a question of law. We must, therefore, apply a de novo standard of review to this issue. *Davenport v. Hansaworld, USA, Inc.*, 212 So. 3d 767, 770 (¶10) (Miss. 2017).

¶62. Both the county and circuit courts rejected Patton Medical's jurisdictional argument, observing that the Relle Sr. summary judgment order was not certified as a final order under Rule 54(b). As such, both courts held that Patton Medical's prematurely filed notice of appeal on that order had no affect at all on the county court's jurisdiction over the lawsuit still pending before it. We agree. As previously discussed, Patton Medical's notice of appeal was not sufficient to confer appellate jurisdiction on the circuit court until the county court entered its final judgment on July 19, 2013. *Mallery*, 792 So. 2d at 228 (¶¶7-9). The county court therefore had jurisdiction to hear, rule upon, and enter judgment upon Relle Sr.'s motion for attorney fees.

¶63. Patton Medical's second contention is that Relle Sr. was not entitled to attorney fees under section 11-53-81. Neither party has briefed the applicable standard of review on this issue, nor was the applicable standard of review addressed in the circuit court. Patton

24

Medical's argument reflects that its contention raises an issue of statutory interpretation, i.e., is Relle Sr. entitled to attorney fees under that portion of section 11-53-81 that provides: "If that person sued on the open-account shall prevail in the suit, he shall be entitled to reasonable attorney's fees to be set by the judge." *See Magnolia Farm Servs., Inc. v. Tunica Oil Co.*, 438 So. 2d 285, 287 (Miss. 1983) (addressing the parties' contradictory interpretations of section 11-53-81 and observing that "[s]tatutory interpretation is the issue before us"). Statutory interpretation is also a question of law that we review de novo. *See Roberts v. New Albany Separate Sch. Dist.*, 813 So. 2d 729, 730-31 (¶4) (Miss. 2002).[7]

¶64. In support of this second contention involving statutory interpretation, Patton Medical argues that its open-account cause of action was just one of the claims it properly pled under the rules, Relle Sr. did not obtain a "favorable ruling" on that claim, and thus attorney fees were not authorized under section 11-53-81. We disagree.

¶65. Patton Medical's complaint detailed an open-account claim against Relle Sr. and O&P. Even before filing an answer, Relle Sr. filed a Rule 12(b)(6) motion based on Patton Medical's failure to state **any** claim against him. In that motion Relle Sr. articulated why he was not individually liable for "debts purportedly owed **on an account** by . . . [O&P] to . . .

---

[7] We note that the Mississippi Supreme Court has applied an abuse of discretion standard when determining whether the trial court was authorized to award attorney fees to a plaintiff who successfully prevailed in his lawsuit alleging breach of contract and also claiming damages owed on an open-account. *T. Jackson Lyons & Assocs., P.A. v. Precious T. Martin, Sr. & Assocs., PLLC*, 87 So. 3d 444, 452 (¶28) (Miss. 2012). In *Lyons*, however, the Mississippi Supreme Court did not interpret any language in section 11-53-81 but rather analyzed whether an "open-account" existed in that case. *Id.* at 452 (¶¶28-36). Here we look to the statutory language of the statute to determine whether the county court appropriately assessed attorney fees under section 11-53-81. For this reason, we find that the appropriate standard of review is de novo.

25

[Patton Medical].” (Emphasis added). Relle Sr. also noted that there was no account between O&P and Patton Medical, and no writing or other agreement establishing his personal liability. Despite this early notice that Relle Sr. intended to seek dismissal of all claims against him, including the open-account claim, Patton Medical did not dismiss its open-account claim against Relle Sr. After further briefing and a hearing, the county court granted Relle Sr.’s motion in full.

¶66. Section 11-53-81 plainly requires that if a “person sued on the open-account shall prevail in the suit, he shall be entitled to reasonable attorney’s fees to be set by the judge.” Patton Medical’s contention that Relle Sr. must obtain a specific “favorable ruling” on the open-account cause of action misses the point because the plain language of the statute provides that the test for whether a defendant is entitled to attorney fees under section 11-53-81 is that he be “sued on the open-account” and “prevail in the suit.” Relle Sr. met both requirements here.[8] The county court remarked several times at the summary judgment hearing that it did not believe Patton Medical had evidence supporting an open-account claim and at the same time explicitly addressed that Patton Medical did, in fact, sue Relle Sr. on

_____

[8] In comparison, section 11-53-81 provides that a plaintiff may only recover attorney fees “when judgment **on the claim** is rendered in favor of the plaintiff.” (Emphasis added). *See Lyons*, 87 So. 3d at 452 (¶28) (specifically determining that plaintiff prevailed on an “open-account” lawsuit and thus the trial court did not abuse its discretion in awarding attorney fees under section 11-53-81); *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 914 (Miss. 1993) (recognizing that “a **plaintiff** is not entitled to attorney’s fees under section 11-53-81 where its claim against the defendant is based on contract rather than an open-account.” (Emphasis added)). This reasoning makes sense because the plaintiff is the master of his complaint, while a defendant is at the whim of the plaintiff as to what claims are brought against him. It would be patently unfair to deny a defendant an award of attorney fees where, as here, Patton Medical did not voluntarily dismiss the open-account claim, forcing Relle Sr. to seek dismissal of all claims brought against him.

26

that basis. The county court then granted Relle Sr.'s summary judgment motion in full. As the county court then expressed to Patton Medical's counsel at the hearing on Relle Sr.'s attorney fees motion, "[i]f you don't prevail on an Open Account, **which was filed**, then the statute says that the Court SHALL award attorney fees to the other side." (Bolding added; capitalization in original).

¶67. To clarify, we note that this is not a case like *Hughes Equipment v. Fife*, 482 So. 2d 1144, 1146-47 (Miss. 1986), where the Mississippi Supreme Court held that a defendant cannot recover attorney fees under the open-account statute when the plaintiff voluntarily dismisses its open-account claim against him pretrial. Here Patton Medical did not voluntarily dismiss its open-account claim against Relle Sr., though it had ample opportunity to do so after having been on notice since June 2011 that Relle Sr. intended to pursue dismissal of that claim and all claims that Patton Medical attempted to pursue against him, individually.

¶68. Further, our own holding in *H & E Equipment Servs., LLC v. Floyd*, 959 So. 2d 578, 583-84 (¶¶16-19) (Miss. Ct. App. 2007) also does not apply. There we determined that the trial court did not err in refusing to award the defendant attorney fees under section 11-53-81 where the defendant obtained summary judgment on the open-account claim against him, but the case proceeded to trial on the remaining contract claim against that defendant. In contrast, in this case, the county court did not grant partial summary judgment only on Patton Medical's open-account claim, with the case proceeding to trial against Relle Sr. on the joint venture claim. Instead, Patton Medical's lawsuit against Relle Sr., individually, was

27

dismissed in full, thus Relle Sr. prevailed.

¶69. Finally, we note that Patton Medical did not contest the reasonableness of the $7,000 attorney fees award when the case was before the circuit court, nor has it done so here. Accordingly, "reasonableness" is not at issue, and we therefore do not address it here.

¶70. Based upon the foregoing, we affirm the circuit court's judgment that the county court's $7,000 attorney fees award under section 11-53-81 was proper and reasonable.

¶71. **AFFIRMED IN PART; REVERSED IN PART; AND THE JUDGMENT OF THE COUNTY COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS REINSTATED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**